UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD SCOTT GAU, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>HILLSTONE RESTAURANT GROUP, INC.,<br><br>　　　　　Defendant. | Case No.  20-cv-08250-SVK<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 11 |

　　　　Before the Court is the motion of Plaintiffs Edward Scott Gau and Brandy Foster-Gau to remand this case to state court. Dkt. 11. All parties have consented to the jurisdiction of a magistrate judge. Dkt. 9, 10. Pursuant to Civil Local Rule 7-1(b), the Court deems this matter suitable for determination without oral argument. For the reasons that follow, the Court **DENIES** Plaintiffs' motion to remand.

**I.　　BACKGROUND**

　　　　Plaintiffs are former employees of the Los Altos Grill restaurant in Los Altos, California, which is owned and/or operated by Defendant Hillstone Restaurant Group, Inc. *See* Ex. B to Dkt. 1 (Complaint) ¶ 9. On September 30, 2020, Plaintiffs filed a class and representative action for wage and hour law violations in Santa Clara County Superior Court. The Complaint defines the putative classes as follows:

> (i) all current and former non-exempt restaurant employees of Defendants in the State of California who worked at least 3.5 hours in any work shift since April 6, 2016 (the "Rest Period Class"), and
>
> (ii) all current and former non-exempt restaurant employees of Defendants in the State of California who worked more than 5.0 hours in any work shift since April 6, 2016 (the "Meal Period Class").

*Id.* ¶ 17. Following service, Defendant Hillstone Restaurant Group, Inc. filed an Answer on November 18, 2020. Ex. K to Dkt. 1 (Answer).

1  On November 23, 2020, Defendant removed the case to this Court, asserting that this Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C § 1332(d) ("CAFA") and that this case may be removed pursuant to 28 U.S.C. § 1441(a). Dkt. 1 (Notice of Removal) ¶ 2. Defendant's notice of removal also asserts that to the extent the Court concludes it lacks original subject matter jurisdiction over any of Plaintiffs' claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a). *Id.* ¶ 52.[1]

Plaintiffs now move to remand this action pursuant to 28 U.S.C. § 1447 on the grounds that the Court lacks subject matter jurisdiction. Dkt. 11. Defendant opposes the motion to remand. Dkt. 13.

## II. DISCUSSION

### A. Removal Jurisdiction Pursuant to CAFA

A defendant who seeks to remove a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court has explained that "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting H.R. Rep. No. 100–889, at 71 (1988)).

"Under CAFA, a federal court may exercise subject matter jurisdiction over a class action where (1) the parties are minimally diverse; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds $5 million." *Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. 3d 1281, 1285 (N.D. Cal. 2019) (citing 28 U.S.C. § 1332(d)). In the removal context, the Court must evaluate whether the parties' citizenship was sufficiently diverse and the amount in controversy requirement was met both when the case is first filed and when the case is removed. *See Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002); *see also Chess v. CF Arcis IX LLC*, No. 20-CV-01625-CRB, 2020 WL 4207322, at *2 (N.D. Cal. July

---

[1] The parties' briefs on the motion to remand do not include any argument concerning supplemental jurisdiction, and therefore this order does not address that issue.

2

22, 2020), appeal dismissed, No. 20-16621, 2020 WL 6802843 (9th Cir. Sept. 21, 2020).

"[N]o antiremoval presumption attends cases invoking CAFA" because "CAFA's primary objective is to ensure Federal court consideration of interstate cases of national importance." *Dart*, 574 U.S. at 89 (internal quotation marks and citations omitted). Nevertheless, even under CAFA, "the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006).

Plaintiffs argue that this case should be remanded because Defendant has not established that the diversity of citizenship or amount in controversy requirements under CAFA are satisfied. Dkt. 11.

### B. Diversity of citizenship

CAFA's requirement of minimal diversity of citizenship between the parties is satisfied where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Chan Healthcare Grp. PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1137 (9th Cir. 2017). Plaintiffs argue that Defendant has failed to carry its burden of establishing that the parties are diverse because Defendant has not established Plaintiffs' state(s) of citizenship. Dkt. 11 at 2-3. Plaintiffs also argue that even if they are found to be citizens of California, the diversity requirement still is not satisfied because Defendant's principal place of business is California, not Arizona. *Id.* at 4-6. The Court now addresses each argument.

#### 1. Plaintiffs' citizenship

Generally, a "natural person's state citizenship is … determined by her domicile, not her state of residence." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* Thus, "[a] person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." *Id.* Because a person's domicile hinges in part on his or her intent, "[r]esidence is not an immutable condition of domicile.'" *Id.* (citation omitted).

The Complaint does not allege the citizenship of Plaintiffs. Defendant has not presented any direct evidence as to Plaintiffs' residence or citizenship as of either date relevant to the

Court's diversity determination—the date the case was first filed in state court (September 30, 2020) or the date the case was removed to this Court (November 23, 2020). However, Defendant's Vice President, Tino Ciambriello, states as follows in his declaration in support of Defendant's Notice of Removal:

> In my capacity as Vice President, I have regular access to employment records of employees of Defendant. Having reviewed such records for Edward Scott Gau and Brandy-Foster Gau [sic] (collectively "Plaintiffs"), I confirmed that Plaintiffs' last known addresses on file are in San Mateo, California.

Dkt. 1-1 (Ciambriello Decl.) ¶ 8. Although Mr. Ciambriello's declaration is silent as to when Plaintiffs' San Mateo address was "last known" to Defendant, the Complaint states that both Plaintiffs left their employment at the Los Altos Grill in June 2020. Complaint ¶ 10. At that time, Mr. Gau had been employed at the restaurant for 15 years, and Ms. Foster-Gau had been employed there for 10 years. *Id*. It is logical and reasonable to infer that Plaintiffs resided in California at least until sometime in 2020, during the period when they were still employed at the Los Altos Grill, which is consistent with Mr. Ciambriello's declaration that their last known address was in San Mateo, California. Indeed, Plaintiffs do not take the position that they were *never* residents of California.

"As a result of the lack of clear guidance from the Ninth Circuit" on the issue of whether a person's residence is presumed to be his domicile unless facts establish the contrary, "district courts are split on this issue." *Cisneros Pantoya v. RAMCO Enterp. L.P.*, No. 19-CV-0336-LHK, 2019 WL 5959630, at *9 (N.D. Cal. Nov. 13, 2019); *see also* cases cited therein. "Nonetheless, numerous courts outside the Ninth Circuit, including the United States Supreme Court and other circuit courts, have concluded that a person's residence is prima facie evidence of domicile and citizenship." *Id.*; *see also* cases cited therein. Like those other courts, courts in this District have held that "a person's residence is prima facie evidence of domicile and citizenship." *See id.* at *10. The Court likewise finds that Plaintiffs' residence in San Mateo, California is prima facie evidence of their domicile and citizenship until sometime in 2020.[2]

---

[2] Plaintiffs' Complaint alleges that they were terminated in or about June 2020 (Complaint ¶ 10), whereas a declaration Plaintiff Foster-Gau submitted in opposition to the motion to remand

4

Defendant argues that it is "justified in relying on Plaintiffs' last known residence as evidence of their domicile until facts adduced establish the contrary." Dkt. 13 at 5. In the Ninth Circuit, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013). On the basis of this "widely accepted" presumption (*id.*), this Court finds that Plaintiffs' domicile in California continued. As a result, although the burden of proving that the Court has subject matter jurisdiction remains on Defendant, the burden of producing evidence to substantiate Plaintiffs' claim of a change in domicile shifts to Plaintiffs. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

Plaintiffs have failed to meet their burden of production. In support of Plaintiffs' motion to remand, Ms. Foster-Gau submitted a declaration stating that she had a conversation with her manager, Erica Lanier, in March 2020 and that she informed Ms. Lanier that she and Mr. Gau "were considering staying with family in Phoenix, Arizona." Dkt. 11-2 (Foster-Gau Decl.) ¶¶ 2-3. Plaintiff's declaration also states that "[l]ater that month, I informed Erica that Scott and I were in Arizona." *Id.* ¶ 3. These statements do not constitute substantial evidence to establish that Plaintiffs resided in Arizona on either September 30, 2020 (when the state court action was filed) or on November 23, 2020 (when the action was removed). Nor have Plaintiffs presented any evidence that as of those dates they intended to remain in Arizona indefinitely.

Accordingly, the Court concludes that for purposes of analyzing whether CAFA's diversity of citizenship requirement is satisfied, Plaintiffs were citizens of California on the relevant dates.

### 2.    Defendant's citizenship

For diversity purposes, a corporation is deemed a citizen of both the state where it is incorporated and the state where it has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010); 28 U.S.C. § 1332(c)(1). Here, there is no dispute that Defendant is

---

suggests that they ceased working at Los Altos Grill in March 2020 (*see* Dkt. 11-2 ¶ 4 ("In March, [the manager] informed me that Scott and I of course would be invited back when the restaurant re-opened.")). The Court finds it unnecessary to pinpoint the exact month when Plaintiffs last resided in California due to the presumption of continuing domicile, discussed below.

incorporated in Delaware. Complaint ¶ 12; Notice of Removal ¶ 16. However, whereas Defendant asserts that its principal place of business is in Phoenix, Arizona (Notice of Removal ¶ 16), Plaintiff argues that Defendant's principal place of business is in California (Dkt. 11 at 4-6).

In determining a corporation's principal place of business, the Court must apply the "nerve center" test, which considers where "a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92-93. The corporation's principal place of business is a single place and "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93. "The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Id.* at 96.

Defendant argues that its principal place of business is in Phoenix, Arizona. Dkt. 13 at 6-9. In support of the notice of removal, Defendant submitted a declaration from its Vice President, Mr. Ciambriello, stating that "Arizona is where Defendant's high-level officers, including its Chief Executive Officer, direct, control, and coordinate Defendant's activities." Ciambriello Decl. ¶ 2. Mr. Ciambriello also states that "Defendant's executive operations, including but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general business operations are managed from Arizona." *Id.* Mr. Ciambriello also submitted Defendant's Statement of Information filed with the California Secretary of State, which identifies an address in Phoenix, Arizona as the address for Defendant's "Principal Executive Office" and for Defendant's Chief Executive Officer and its Secretary/Chief Financial Officer. Ex. B to Ciambriello Decl.

In opposition to the motion to remand, Defendant submitted a declaration of its Vice President and General Counsel W. Glenn Viers, which provides additional information about Defendant's operations. Dkt. 13-1 (Viers Decl.). Mr. Viers states that Defendant operates restaurants throughout the United States, including California, Arizona, New York, Maryland, Georgia, Florida, Texas, and Tennessee, under a variety of tradenames. *Id.* ¶ 3. Mr. Viers states

that "Defendant's principal place of business" is in Phoenix, Arizona. *Id.* ¶ 7. He explains that Defendant's Phoenix office is "an actual physical location and is not just a place to drop mail." *Id.* Mr. Viers states that "[m]any of Defendant's executives and corporate officers live in Phoenix and work out of Defendant's corporate offices there." *Id.* Mr. Viers states that he regularly travels to the Phoenix corporate offices "to conduct business and meet with my colleagues, who include other Vice Presidents and executives, all of whom regularly and consistently meet, direct, oversee, and control enterprise-wide financing, accounting, risk management, construction and facilities management, human resources, information technology, and payroll, among other core business functions." *Id.* According to Mr. Viers, "[v]irtually all of Defendant's corporate files are located at the Phoenix location, include payroll for all of Defendant's employees and accounting functions." *Id.* ¶ 8. Mr. Viers again submits Statements of Information filed with the California Secretary of State that identify an address in Phoenix, Arizona as the address for Defendant's "Principal Executive Office" and several of Defendant's officers. Ex. A to Viers Decl. Mr. Viers also submits an exemplar Fictitious Business Name Statement filed by Defendant that identifies the same Phoenix address in a space for the corporation to provide its address "as registered with the California Secretary of State." Ex. B to Viers Decl. In addition, Mr. Viers submits filings with the California Department of Tax and Fee Administration and with the United States Patent and Trademark Office that provide the same Phoenix address for Defendant. Exs. C and D to Viers Decl.

In support of their argument that Defendant's principal place of business is in California, not Arizona, Plaintiffs offer several items of evidence. First, Plaintiffs submit a Notice of Removal from *Nyerges v. Hillstone Restaurant Group., Inc.*, a case Defendant removed to the United States District Court for the District of Arizona, in which Defendant stated that it "was and is a corporation incorporated under the laws of the State of California and having its place of business in the State of California." Ex. A to Dkt. 11-1 (Request for Judicial Notice) ¶ 6.[3] In

---

[3] The Court grants Plaintiffs' request for judicial notice of this document. It is a court record that is not subject to reasonable dispute because it can be readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Ev. 201(b)(2); *see also Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

response, Defendant's Vice President and General Counsel, Mr. Viers, states that the filing of this document was "[d]ue to a miscommunication" between him and Defendant's counsel in the *Nygeres* case. Viers Decl. ¶ 10. Defendant submits notices of removal from two other cases in which Defendant successfully removed cases to federal court, both of which identify Arizona as the location of Defendant's principal place of business. Ex. E to Viers Decl.

Second, Plaintiffs submit a declaration from counsel explaining that Google searches for "hillstone restaurant group, inc. corporate headquarters" and "hillstone restaurant group corporate headquarters" result in an address at 147 South Beverly Drive, Beverly Hills, California 90212. Dkt. 11-3 (Yang Decl.) ¶ 3. Counsel's declaration also states that Defendant's website consistently directed him to contact the company at the same address in Beverly Hills, California, and stated that the company is "[b]ased now in Los Angeles." *Id.* In his declaration, Defendant's Vice President, Mr. Viers, explains that Defendant's website identifies the Beverly Hills location as a contact location under a tab labeled "Contact." Viers Decl. ¶ 9. According to Mr. Viers, the Beverly Hills address is "where guest inquiries are directed." *Id.* That office has "only approximately 5 employees, including a single corporate officer, our Vice President of Design, and several architects." *Id.* Mr. Viers states that these individuals "handle functions principally related to the design and construction of restaurants, and business matters related to the receipt and functioning of guest relations." *Id.*

Third, the declaration of Plaintiffs' counsel indicates that Defendant's website states that the company is "helmed by George [W. Biel]." Yang Decl. ¶ 3. Counsel's declaration, which states that he researched the "identities and locations of Defendant's top executives," states "[o]n information and belief" that "George W. Biel, Founder, President & Chief Executive Officer—and Carol R. Biel, Vice President—are located in California, and 'Brian Biel, Vice President, resides in the Greater Los Angeles Area." *Id.*

Weighing the evidence in the record, the Court concludes that Defendant has carried its burden of demonstrating that for diversity purposes its principal place of business is in Phoenix, Arizona, not California. In reaching this conclusion, the Court does not credit conclusory allegations in the declarations of Defendant's vice presidents concerning the location of

8

company's principal place of business. *See* Ciambriello Decl. ¶ 2 (stating that Defendant's "principal place of business [is] in Arizona" because it is "where Defendant' high-level officers, including its Chief Executive Officer, direct, control, and coordinate Defendant's activities"); Viers Decl. ¶¶ 4, 7 (stating the Defendant's principal place of business is in Arizona). In addition, the Court recognizes that the mere filing of corporate forms listing a corporation's principal executive offices is not, without more, sufficient proof to establish a corporation's "nerve center." *Hertz*, 559 U.S. at 97. Here, however, Defendant has provided proof that it has a physical office in Phoenix, Arizona, where "[m]any of Defendant's executives and corporate officers" live and work, at which Defendant's officers and executives "regularly and consistently meet, direct, oversee, and control" key corporate functions, and at which "[v]irtually all of Defendant's corporate files are located." Viers Decl. ¶¶ 7-8. Plaintiffs have not countered Defendant's explanation that its office in Beverly Hills, California has only a few employees and is focused on discrete tasks.

Moreover, although Plaintiffs attempt to show that some of Defendant's officers live in the Los Angeles area, Plaintiffs' counsel has not explained the searches he ran or the source of this information, which he provides "on information and belief." Yang Decl. ¶ 3. From the fact that Mr. Ciambriello and Mr. Viers, both of whom are Vice Presidents of Defendant, signed their declarations in California and Georgia, respectively, it appears that some of Defendant's officers reside outside Arizona. However, this fact does not outweigh Defendant's evidence that the Arizona office is the company's actual center of direction, control, and coordination.

Although the Court is troubled by Defendant's representation to the Arizona district court that Defendant's principal place of business is in California, the notice of removal in the Arizona case also incorrectly stated that Defendant is a California corporation, whereas the parties in this case do not dispute that Defendant is incorporated in Delaware. This fact comports with the explanation provided by Mr. Viers, Defendant's general counsel, in his sworn declaration that the Arizona filing was the result of a miscommunication, especially in light of Defendant's filings in other cases that state that its principal place of business is in Arizona.

Accordingly, the Court concludes that for purposes of analyzing whether CAFA's

9

diversity of citizenship requirement is satisfied, Defendant has demonstrated that it is a citizen of Delaware (its state of incorporation) and Arizona (the location of its principal place of business). Because, as discussed above, Defendant has also demonstrated that Plaintiffs are citizens of California for diversity purposes, CAFA's diversity of citizenship requirement is satisfied.

### C. Amount in Controversy

The Court must next consider whether this case satisfies CAFA's requirement that the amount in controversy is over $5 million. When a defendant files a notice of removal from state to federal court under CAFA, it must file a notice containing a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). The notice must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart*, 574 U.S. at 89. If a plaintiff challenges the defendant's alleged amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88 (citing 28 U.S.C. § 1446(c)(2)). The defendant can support its amount in controversy calculation in two ways. First, the defendant may demonstrate that "it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). In that situation, the Court assumes the truth of the allegations of the plaintiff's complaint. *Mendoza v. National Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL 2929745, at *2 (N.D. Cal. July 8, 2019). Second, the defendant "may submit evidence outside the complaint, including affidavits or declarations, and other 'summary-judgment type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer*, 116 F.3d at 377).

Here, the amount in controversy is not facially apparent from the Complaint, but Defendant's Notice of Removal alleges that the amount in controversy exceeds $5 million and contains Defendant's calculation of the amount in controversy. Notice of Removal ¶¶ 19-46. Specifically, based on its business records Defendant estimates that over 3300 employees fall within the classes defined in the Complaint. *Id.* ¶¶ 25-27. Defendant also determined that it paid the proposed class members an average hourly rate of approximately $16.67. *Id.* ¶ 28. Based on

10

the number of hours worked and a "conservative" estimated violation rate of 20 percent, Defendant then calculates that the amount in controversy for Plaintiff's rest period and meal break claims is nearly $7.2 million. *Id.* ¶¶ 31-45.

Plaintiffs challenge Defendant's calculation of the amount in controversy on the ground that the calculation includes class action recoveries not only for class members such as Plaintiff Gau, but also recoveries for Plaintiff Foster-Gau and others who are subject to arbitration agreements with Defendant that included class waivers. Dkt. 11 at 7-8. According to Plaintiffs, "prior to the time of removal, the September 30, 2020 Complaint already excluded Plaintiff Foster-Gau from class claims" and "[o]n October 12, 2020, prior to the time of removal, Defendant—agreeing with the Complaint's position—confirmed that Foster-Gau could not pursue class claims" *Id*. at 8. Plaintiffs also note that Defendant's Answer, filed prior to removal, stated that "each cause of action set forth [in the Complaint], or some of them, cannot be maintained against Defendant to the extent the claims of Plaintiffs and/or the putative class members/allegedly aggrieved employees are subject to binding agreements to arbitrate." *Id*. (citing Answer at 11:18-21). Plaintiffs argue that Defendant's calculation of the amount in controversy fails to distinguish between individuals who are and are not subject to an arbitration agreement and therefore "relies on unreasonable assumptions." Dkt. 11 at 8.

It is well-established that in determining the amount in controversy, the Court considers only the amount at stake in the litigation, not the likelihood of the plaintiff prevailing. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). In particular, the Court does not consider the strength of the defendant's affirmative defenses. *Id.* at 928 ("the strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation") (emphasis in original). "In other words, just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (internal quotation marks and citation omitted). It follows from this principle that "evidence of one arbitration agreement does not necessarily defeat jurisdiction, especially when the scope and applicability of the arbitration agreement remains in

11

question." *Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx), 2017 WL 2541401, at *8 (C.D. Cal. June 12, 2017). "For that reason, the Court's evaluation of the amount in controversy remains unaffected by Plaintiff's claim that some class members are bound by arbitration agreements." *Id*.

Plaintiffs' argument that the amount in controversy should not include damages for individuals who fall within the class definition but who are subject to an arbitration agreement with a class waiver is tantamount to an impermissible "attempt to divest this Court of federal jurisdiction after the case has been removed by limiting [Plaintiffs'] class definitions." *Jian-Ming Zhao v. RelayRides, Inc.*, No. 17-cv-04099-JCS, 2017 WL 6336082, at *15 (N.D. Cal. Dec. 12, 2017). Plaintiffs assert that "in the Complaint, Plaintiff Gau alleges class action claims, and Plaintiff Brandy Foster-Gau does not." Dkt. 11 at 7. Arguably, the Complaint makes this distinction. *See* Complaint at caption (identifying Plaintiffs as "EDWARD SCOTT GAU, as an individual and on behalf of all others similarly situated, and as a private attorney general, and BRANDY FOSTER-GAU, as a private attorney general"); ¶ 17 (stating that "Plaintiff" seeks class certification). But otherwise, the Complaint defines the putative class to include "all current and former non-exempt restaurant employees" who worked certain length shifts since April 6, 2016. *Id*. ¶ 17. "Having intentionally defined [their] classes broadly, [Plaintiffs] cannot now escape the consequences of that choice when it comes to the amount in controversy, even if [Defendant] may have a strong defense based on the [arbitration agreement]." *Jian-Ming Zhao*, 2017 WL 6336082, at *15.

Plaintiffs do not challenge Defendant's assumed 20 percent violation rate for the claims at issue, the $16.67 hourly rate of pay for the putative class members, or any aspect of Defendant's calculation of the amount in controversy other than the fact that the calculation includes potential damages for the entire putative class, including class members that may have executed arbitration agreements with class waivers. Even deducting the amount at issue for Plaintiff Foster-Gau, who is arguably excluded from the proposed class in the Complaint, the amount in controversy is well over $5 million on Plaintiffs' rest period and meal break claims alone. As explained above, Plaintiffs' challenge to the amount in controversy on the basis of Defendant's arbitration

12

1  agreements with some class members is unavailing, and accordingly the Court concludes that the
2  amount in controversy requirement is satisfied.

### D. Jurisdictional Discovery

The Court has discretion to grant jurisdictional discovery to assist it in determining whether it has subject matter jurisdiction. *See Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). "[A]ny decision regarding jurisdictional discovery is a discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain substantial, burdensome discovery on jurisdictional issues." *Abrego Abrego*, 443 F.3d at 692 (internal quotation marks and citation omitted). Here, neither party has requested an opportunity to conduct jurisdictional discovery, and the Court in its discretion declines to order such discovery *sua sponte*.

## III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' motion to remand this case to state court.

**SO ORDERED.**

Dated: February 26, 2021

SUSAN VAN KEULEN
United States Magistrate Judge

13